# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

EDWARD HUGLER, Acting Secretary
of Labor, United States Department of
Labor,[1]

    Plaintiff,

v.

Case No. 3:15-cv-94-J-32JRK

TRUSS SYSTEMS, LLC, TRUSS
SYSTEMS, LLC PROFIT SHARING
PLAN, a benefit plan, ANDREA LYNN
MCCARTHY, an individual, and LISA
HALL, an individual,

    Defendants.

## **O R D E R**

This ERISA case is before the Court on Edward Hugler, the Acting Secretary of Labor's Motion for Summary Judgment and accompanying exhibits (Doc. 21, 21-1, 21-2, 21-3, 21-4, 21-5, 21-6), which were filed on November 21, 2016. Defendants Truss Systems, LLC, Truss Systems, LLC Profit Sharing Plan, Andrea Lynn McCarthy, and Lisa Hall, who are all represented by counsel, failed to respond despite an order advising them to file responses. (Doc. 22). For the reasons that follow, the Court grants Plaintiff's Motion for Summary Judgment as to Defendants Truss Systems, LLC, Andrea Lynn McCarthy, and Lisa Hall.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), this Court has substituted the previous Secretary of Labor Thomas E. Perez for the current Acting Secretary of Labor Edward Hugler.

## I. FACTS[2]

Truss Systems, LLC (the "Company") is a Florida limited liability corporation located in Bunnell, Florida. (Doc. 21-5 at 2[3]). The Company is a construction company that builds and manufactures wooden roof and floor tresses for commercial and residential buildings. (Doc. 21-3 at 22; Doc. 21-5 at 2). Defendants Andrea Lynn McCarthy and Lisa Hall served as co-owners of the Company at all relevant times. (Doc. 21-3 at 22). In 1996, the Company implemented the Truss Systems, LLC Profit Sharing Plan (the "Plan") to offer retirement benefits to participating employees and to help retain their employment. (Doc. 21-1 at 2 ¶ 3; Doc. 21-3 at 22). The Plan was a profit-sharing plan funded by discretionary employer contributions and thus subject to Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. (Doc. 21-1 at 2 ¶ 4, at 3 ¶ 8).

The Company was the Plan Sponsor and Plan Administrator, but McCarthy, as the Company's president, acted as Plan Administrator on behalf of the Company, exercising discretionary authority with respect to the administration of the Plan and the disposition of Plan assets. (Doc. 21-3 at 21). McCarthy and Hall served as Co-

---

[2] Plaintiff provided a Concise Statement of Material Facts in support of its motion for summary judgment. (Doc. 21-1). The Statement is supported by specific references to Defendants' Answer, an affidavit, and admissions on file with the Court. (Doc. 8; Doc. 21-2; Doc. 21-3). Because Defendants failed to respond to Plaintiff's Motion for Summary Judgment, this Court is relying on the Concise Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment. Also, by failing to respond to Plaintiff's Request for Admissions, Defendants have admitted the matters set forth therein. Fed. R. Civ. P. 36(a)(3); <u>Gutierrez v. Cable Equip. Servs., Inc.</u>, 620 Fed. Appx. 882 (11th Cir. 2015).

[3] Page citations to documents in the Court file are to the page number listed in the CM/ECF header.

Trustees of the Plan and were responsible for choosing the Plan's investment options. (Doc. 21-3 at 21). According to the Plan's Plan Document, the Trustee "shall invest and reinvest the Trust Fund without distinction between income or principal" in a number of listed ways, including but not limited to investment of stocks, other common trust funds, or real property; by depositing into savings and loan associations; or by purchasing and selling put and call options. (Doc. 21-3 at 25).

In 2009, Company bank records from Raymond James and Sunshine Bank established that starting January 28, 2009 through June 6, 2009, McCarthy made a series of fifteen separate withdrawals from the Plan, totaling $111,624.67, via the Company's money market account at Raymond James. (Doc. 21-4 at 18). McCarthy consulted with Hall, as the Co-Trustee, about the withdrawals from the Plan. (Doc. 21-3 at 6, 15-16). McCarthy transferred the money into the Company's operating account at Sunshine Bank and used the Plan's assets to satisfy the Company's payroll obligations, pay Company vendors, and make payments regarding the loans on the land and building owned by the Company. (Doc. 21-1 at 3 ¶ 9). McCarthy also used the money to make payments regarding land owned by both McCarthy and Hall in a separate corporate obligation. (Doc. 21-1 at 3 ¶ 9; Doc. 21-4 at 17). At the time of these withdrawals, the Plan had twenty-two employee participants, including McCarthy and Hall.[4] (Doc. 21-4 at 18). The final withdrawal, on June 6, 2009, left the Plan with a zero balance and no assets. (Doc. 21-4 at 19).

---

[4] Prior to the withdrawals, McCarthy's account within the Plan had a balance of $34 and Hall's account had approximately $23,000. (Doc. 21-4 at 18). The remainder, some $88,000, was the pension money for other Company employees.

3

The Employee Benefits Security Administration ("EBSA") began an investigation into the Company, and in June 2016, McCarthy was prosecuted criminally for her conduct.[5] (Doc. 21-2 at 1-2). McCarthy pled guilty to embezzlement, is serving probation, and has been ordered to make restitution of $40,306.01. (Doc. 21-2 at 2; Doc. 21-1 at 4 ¶ 13). To date, $71,080.83 has been restored to the Plan.[6] (Doc. 21-1 at 4 ¶ 13). However, the Plan has not been compensated for the lost earnings and interest during the approximately seven years it was deprived of the use of the withdrawn funds. (Doc. 21-2 at 3). EBSA determined that $25,253.93[7] is the amount of lost earnings and interest owed to the Plan as a result of McCarthy and Hall's conduct. (Doc. 21-2 at 3).

The Secretary of Labor subsequently filed suit in this Court, alleging that McCarthy breached her fiduciary obligations as Plan Administrator and that McCarthy and Hall, through the Company, violated multiple provisions of ERISA, namely § 403(c)(1), 29 U.S.C. § 1103(c)(1); §§ 404(a)(1)(A)–(B) & (D), 29 U.S.C. §§ 1104(a)(1)(A)–(B) & (D); § 406(a)(1)(D), 29 U.S.C. 1106(a)(1)(D); and § 406(b)(1) & (2),

---

(Doc. 21-4 at 18).

[5] United States v. Andrea Lynn McCarthy, U.S. District Court, Middle District of Florida (Jacksonville Division), Case No. 3:15-cr-69-J-32JRK (assigned to the undersigned).

[6] At the sentencing hearing in Case No. 3:15-cr-69-J-32JRK, the Court accepted evidence that as of that date, McCarthy and the Company had restored or offset $71,080.83 to the Plan. (Doc. 21-2 at 2).

[7] The EBSA arrived at this figure by calculating the lost earnings on the $111,624.67 based on specific withdrawal dates and repayment dates for money that has been repaid, using the IRS section 6621(a)(2), 26 U.S.C. § 6621(a)(2), underpayment rate.

4

29 U.S.C. § 1106(b)(1) & (2). Defendants participated at first, with the filing of an answer and affirmative defenses. (Doc. 8) Plaintiff served requests for admissions on both McCarthy and Hall, but they did not respond. Plaintiff now moves for summary judgment. (Doc. 21).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the court that there are no genuine disputes of material fact. BVS Acquisition Co., LLC v. Brown, 649 Fed. Appx. 651, 658 (11th Cir. 2016) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). Once the moving party satisfies its burden, the non-moving party "must then go beyond the pleadings, and . . . designate specific facts showing that there is a genuine issue for trial." Barreto v. Davie Marketplace, LLC, 331 Fed. Appx. 672, 673 (11th Cir. 2009) (citations and quotations omitted). If the non-moving party fails to respond, the district court may not base the entry of summary judgment on the mere lack of response and instead must consider the merits of the motion. U.S. v. One Piece of Real Prop., 363 F.3d 1099, 1101 (11th Cir. 2004). In doing so, summary judgment would be appropriate where the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) & (c)(1)(A). A fact is material if it is one that "might affect the outcome

of the suit under the governing law." Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1303 (11th Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (citations and quotations omitted).

## III. APPLICATION

The Secretary asserts that summary judgment is appropriate because the Plan in question is an ERISA Plan; McCarthy, Hall, and the Company were Plan fiduciaries; and McCarthy, with Hall's approval, made unauthorized distributions from the Plan to the Company totaling $111,624.67, causing the Plan to engage in prohibited transactions. In addition, the Secretary submits that McCarthy and Hall, as fiduciaries of the Plan, are liable for the losses to the Plan, including the lost earnings and interest calculated by the Secretary.

### A. ERISA Requirements

Section 409(a) of ERISA states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). Under ERISA's statutory framework, the Secretary must establish that (1) Truss Systems, LLC Profit Sharing Plan was a covered Plan; (2) McCarthy, Hall, and the Company were fiduciaries; and (3) McCarthy and Hall breached their fiduciary duties resulting in loss to the Plan.

6

### 1. The Plan was an ERISA Plan

ERISA defines a covered employee benefit plan to include "employee pension benefit plan[s]." 29 U.S.C. § 1002(2)(A). An employee pension plan is defined as "any plan, fund, or program" which is "established or maintained by an employer or by an employee organization, or both, to the extent that . . . such plan, fund, or program . . . provides retirement income." Id.

The Truss Systems, LLC Profit Sharing Plan was a covered ERISA plan. The Plan was established by the Company for the purpose of offering retirement benefits to participating employees and was funded by discretionary employee contributions. (Doc. 21-1 at 2 ¶ 4).

### 2. McCarthy, Hall, and the Company were Plan Fiduciaries

Under ERISA, a fiduciary is "*anyone* . . . who exercises any discretionary control or authority over the policy's management, administration, or assets." Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993) (citing 29 U.S.C. § 1002(21)(A)) (emphasis added). In other words, a person does not have to be a named fiduciary by the benefit plan to qualify as an ERISA fiduciary. Id. However, some offices or positions, such as plan administrator or trustee of a plan, "must by the very nature of [the] position, have 'discretionary authority or discretionary responsibility in the administration of the plan . . . . Persons who hold such positions will therefore be fiduciaries.'" Baker v. Big Star Div. of the Grand Union Co., 893 F.2d 288, 290 n.2 (11th Cir. 1989) (quoting 29 C.F.R. § 2509.75-8 at D-3 (1988)). In addition, the Supreme Court has held that an ERISA Plan's "fiduciary" is defined "not in terms of formal trusteeship, but in *functional* terms of control and authority over plans, thus expanding the universe of

7

persons subject to fiduciary duties and to damages . . . ." <u>Mertens</u>, 508 U.S. at 262 (emphasis in original).

Here, it is undisputed McCarthy, Hall, and the Company were fiduciaries of the Plan. McCarthy was a Co-Trustee and the named Plan Administrator on behalf of the Company. As Plan Administrator, she was responsible for carrying out the daily responsibilities of administering the Plan. Hall's position as Co-Trustee of the Plan also conferred fiduciary status, as the very nature of the position of Co-Trustee required Hall to "perform one or more [fiduciary] functions." <u>See</u> 29 C.F.R. § 5509.75-8 at D-3. Furthermore, pursuant to the Plan Agreement, as Co-Trustee Hall had the authority to invest the Plan's assets and confer with McCarthy as Co-Trustee with regard to the investment of the funds. The Company, as Plan Administrator, is also a fiduciary to the Plan by the very nature of its named position. <u>Id.</u> In addition, during all relevant times McCarthy and Hall possessed the authority and discretion to manage and control the Plan assets based on their functional positions in the company. <u>See</u> <u>Mertens</u>, 508 U.S. at 262. Thus, the Court finds that McCarthy, Hall, and the Company were Plan fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A).

### 3. **McCarthy, Hall, and the Company Breached their Fiduciary Duties**

The Secretary asserts that McCarthy, Hall, and the Company breached their fiduciary obligations in the following two ways: (1) by failing to discharge their duties with respect to the Plan solely in the interest of the Plan participants and beneficiaries by making unauthorized distributions from the Plan to the Company totaling $111,624.67; and (2) by engaging in prohibited transactions, to wit causing the

Company to make direct transfers of Plan assets to and for the benefit of parties in interest.

An ERISA fiduciary must discharge her duties "solely in the interest of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). Indeed, a fiduciary must make decisions "with an eye single to the interest of the participants and beneficiaries" and "avoid placing themselves in a position where their acts as officers or directors of their corporation will prevent their functioning with the complete loyalty to participants demanded of them as Trustees of a pension plan." Deak v. Masters, Mates & Pilots Pension Plan, 821 F.2d 572, 580-81 (11th Cir. 1987) (quoting Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982), cert. denied, 459 U.S. 1069 (1982)). Fiduciaries are liable for breach of these duties, and Section 409(a), 29 U.S.C. § 109(a), specifies the remedies available against them: The fiduciary is personally liable for damages, for restitution, and for "such other equitable or remedial relief as the court may deem appropriate," including removal of the fiduciary. Mertens, 508 U.S. at 252.

In her May 6, 2015 plea agreement entered in case 3:15-cr-69-J-32JRK (Doc. 21-4), McCarthy admitted to a series of prohibited transactions in breach of her ERISA fiduciary duties. She admitted that as "Plan Trustee" and "Plan Administrator" she "knowingly embezzled and stole and willfully converted to [her] own use, and the use of another, moneys funds, credits, and assets of the Plan." (Doc. 21-4 at 15). McCarthy also admitted that she caused approximately $111,625.00 to be

9

electronically transferred from the Plan's trust account into the Company's money market account. (Doc. 21-4 at 17). The admissions made in the plea agreement are corroborated by the Affidavit of Norman Rivera, an employee of the EBSA (Doc. 21-2), who supervised the investigation of this case. McCarthy admitted that once in the money market account, "the funds were transferred via intra-banking transfers to the Company's operating account." (Doc. 21-4 at 17). Once in the operating account, McCarthy admitted to personally penning checks for various Company bills, including payroll and vendors. (Doc. 21-4 at 17). Also included were checks payable to herself and checks made payable for mortgage payments on land separately owned by both McCarthy and Hall. (Doc. 21-4 at 17).

This conduct specifically violated the "Prohibited Transactions" section of ERISA. 29 U.S.C. § 1106(a) states:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . .
>
> (B) lending of money or other extension of credit between the plan and a party in interest . . . [or the]
>
> (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

As Co-Trustee and Plan Administrator, McCarthy was a "party in interest" under 29 U.S.C. § 1002(14)(A). By transferring the funds to satisfy various Company debts, McCarthy violated 29 U.S.C. § 1106(a)(D). As co-owner of the Company, McCarthy had a personal financial interest in making sure the Company's debts were paid. McCarthy was not authorized to use the Plan's assets to satisfy the Company's business obligations. She was prohibited under both the Plan Agreement and ERISA

from transferring the Plan's assets to the Company's operating account to satisfy the Company's debts.

McCarthy's conduct also violated 29 U.S.C. § 1106(b)(1), which states that a fiduciary must not "deal with the assets of the plan in his own interest or for his own account." By transferring a portion of the Plan's assets to pay mortgage payments on land separately and personally owned by McCarthy and Hall, McCarthy breached her fiduciary duty. McCarthy also personally penned checks payable to herself. The complete depletion of the Plan's assets for the Company's business purposes and McCarthy and Hall's own personal and separate corporate obligation was unquestionably a series of acts without "an eye single to the interests of the participants and beneficiaries of the plan." Deak, 821 F.2d at 580

Under ERISA, Hall's conferral and/or failure to recognize and prevent McCarthy from unlawfully withdrawing the Plan's assets imposes liability on Hall as a co-fiduciary. Although it was McCarthy, and not Hall, who was prosecuted for embezzlement of the Plan's funds, Hall, by virtue of her status as a co-fiduciary under 29 U.S.C. § 1105, is liable for McCarthy's breach of fiduciary responsibility. Section 1105(a) of 29 U.S.C. states:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

By virtue of Hall's deemed admissions, there is evidence that McCarthy consulted with Hall about the withdrawals from the Plan. (Doc. 21-1 at 5- 6, 14-16). Between January 2009 and April 2009, Hall knew that McCarthy withdrew money from the Plan and that the withdrawn funds would then be used to benefit the Company. (Doc. 21-3 at 15). As such, Hall participated knowingly in McCarthy's breach of her fiduciary duty and is therefore liable under 29 U.S.C. § 1105(a)(1). Furthermore, there is no evidence that Hall made any reasonable efforts to prevent or remedy McCarthy's conduct, as the Plan's assets were completely depleted by June 2009. (Doc. 21-4 at 19). In fact, the record indicates that McCarthy gave Hall assets from the Plan for Hall's personal use. (Doc. 21-3 at 6). Thus, Hall's knowledge of McCarthy's breach coupled with Hall's failure to make reasonable efforts to remedy the breach constitutes a violation of 29 U.S.C. § 1105(a)(3), and her use of Plan funds to pay the separate mortgage obligation violates section 1106(b)(1).

Finally, as a fiduciary of the Plan, the Company violated 29 U.S.C. § 1106(b)(1) when it used Plan assets to satisfy its own debts and obligations. Section 1106(b)(1) provides that "[a] fiduciary with respect to a plan shall not deal with the assets of the plan in his own interest or for his own account." By using the wrongfully transferred

assets for its own general business purposes, the Company engaged in a prohibited transaction constituting a breach of its fiduciary duty.

The Court, after reviewing the entire summary judgment record, determines there is no evidence to refute the evidence presented by the Acting Secretary; thus, there is no genuine issue of material fact which precludes the entry of summary judgment in favor of the Acting Secretary.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. 21) is **GRANTED**.

2. No later than **May 5, 2017** the Acting Secretary shall file a proposed form of judgment.

**DONE AND ORDERED** in Jacksonville, Florida the 14th day of April, 2017.

TIMOTHY J. CORRIGAN
United States District Judge

k.
Copies:

Counsel of record